IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELITE PRECISION FABRICATORS, INC., | § § § | |
| *Plaintiff,* | § § | NO. _____ |
| v. | § § | [JURY DEMANDED] |
| GENERAL DYNAMICS LAND SYSTEMS, INC. | § § § § | |
| *Defendant* | § | |

## ORIGINAL COMPLAINT

Plaintiff, Elite Precision Fabricators, Inc. ("Plaintiff" or "Elite"), brings this action against Defendant, General Dynamics Land Systems, Inc. ("Defendant" or "GDLS"), and alleges:

## PRELIMINARY STATEMENT

1. This action arises out of Defendant's breach of contract, fraud and deception in connection with Defendant's promises to pay for goods and services provided to GDLS. Elite and GDLS entered into a Work Stoppage Agreement (the "WSA") in which Elite agreed to list, organize and provide GDLS with work-in-progress, inventory, and items manufactured by third-party subcontractors. In return, GDLS promised to pay Elite for these goods and services. Elite performed in full, transferring approximately $3.7 Million of goods to GDLS. GDLS, however, breached the WSA and refused to pay anything for the valuable goods received under the WSA. Defendant's wrongful actions have been disastrous for Elite, a small fabrication shop in Montgomery, Texas, forcing it to file for Chapter 11 protection with the bankruptcy courts and incurring millions in damages as a result of GDLS's actions. *See* Case No. 14-31773; In Re: Elite Precision Fabricators, Inc.,

Debtors; In the United States Bankruptcy Court, Southern District of Texas, Houston Division.

## THE PARTIES

2. Plaintiff, Elite Precision Fabricators, Inc., is a Texas Corporation with its principal place of business at 2239 Saint Beula Chapel Road, Montgomery, Texas 77316.

3. Defendant, General Dynamics Land Systems, Inc., is a Michigan corporation with its principal place of business at 38500 Mound Road, Sterling Heights, Michigan 48310.  It may be served with process by serving CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

4. This court has jurisdiction over this lawsuit because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00.

5. A substantial part of the events or omissions giving rise to this claim occurred in this district.  Defendants purposefully availed themselves of the benefits of doing business in the State of Texas.  Venue is, therefore, proper in this district pursuant to 28 U.S.C. § 1391(a)(2).

## FACTUAL ALLEGATIONS

6. Elite is a small, privately-owned metal fabrication shop located in Montgomery, Texas.  They have been in business since 1997, and were profitable until their failed relationship with GDLS described herein.  By 2010, Elite was earning $6-8 Million a year in gross revenue with over 50 fulltime employees.

7. In January 2011, Elite was approached by a manufacturing company from Israel (Tamor SR) with the promise of a lucrative business project involving the

construction of components for Israeli Armored Personnel Carriers (APC) for the Israeli Ministry of Defense. The Israeli government had contracted with GDLS for construction of the APCs. The production of the Israeli armored vehicles is a United States Foreign Military funded project. As such, subcomponents of the APCs had to be constructed in the United States by a U.S. manufacturer. Tamor America, a subsidiary of Tamor SR, acquired fifty percent of Elite (a qualified U.S. manufacturer) so that Tamor could continue to participate in GDLS contracts to build components of the APCs – the Namer kits.

8.  Prior to acquiring Elite, Tamor had already estimated and negotiated pricing for construction of the Namer kits. Elite was not involved in the estimating or negotiation process for the Namer kit orders. All pricing was negotiated by Tamor, which had a prior business relationship with GDLS, without Elite's involvement. GDLS placed orders with Elite for construction of 110 sets of parts for Namer kits to be delivered in 2013 and 2014.

9.  Soon after the orders were placed, it became quickly apparent to GDLS, Tamor and Elite that the pricing for the Namer kits was grossly underestimated by Tamor and GDLS. As a result, Elite and GDLS abandoned the fixed price purchase order terms and moved first to a progressive billing arrangement, with the parties acknowledging the gross underpricing of the original contract and need for further adjustments to pricing if Elite were to continue working on the Namer kits.

10.  GDLS, with full understanding of the enormous financial drain on Elite for continuing production, pushed Elite to continue production at an even faster rate. GDLS promised Elite that further payment accommodations would be forthcoming. Based upon GDLS's promises, Elite increased efforts to produce the Namer kits at an ever increasing rate throughout 2012 and 2013, despite the monstrous financial burdens. To satisfy GDLS's

demands, and at great cost to Elite, Elite hired subcontractors to produce some of the parts associated with the Namer kits. Elite would not have hired subcontractors if GDLS had not promised to pay Elite the extra costs associated with having a third party do the work.

11. By Summer of 2013, it became apparent to both Elite and GDLS that Elite could not continue with the Namer project because of the financial burden associated with Elite borrowing millions to finance the project. In September 2013, GDLS and Elite negotiated a Work Stoppage Agreement ("WSA") to end Elite's involvement with the APC project. Under the WSA, all finished product, work in progress, and third-party purchases of materials and parts was to be inspected and inventoried jointly by Elite and GDLS, with a final payment to Elite for providing these goods to GDLS. Elite complied with all requirements of the WSA, delivered the goods as promised, and issued a single final invoice of approximately $3.7 Million for the goods sent to GDLS. Throughout this period, GDLS repeatedly confirmed it was going to pay for all work in progress, inventory and purchased goods. GDLS, however, breached the WSA and has refused to pay Elite a single penny. GDLS's fraud and breach of the WSA has caused millions in damages to Elite and its creditors, including Elite's seeking protection from the Bankruptcy Courts to prevent foreclosure by creditors, many of whom are associated with the Namer kit project.

## CAUSES OF ACTIONS

### CAUSE OF ACTION I – BREACH OF CONTRACT

12. Elite incorporates the allegations set forth above as if fully set forth herein.

13. Elite and GDLS entered into the Work Stoppage Agreement ("WSA") in September 2013. Under the WSA, Elite was to provide goods to GDLS in exchange for

payment. Elite performed and all conditions precedent to Elite's claims for relief have been performed or occurred. GDLS breached the WSA by failing to pay Elite.

14. As a direct and proximate result of GDLS's breach of contract, Elite has been damaged by millions of dollars. Elite seeks all actual, consequential, incidental and exemplary damages as allowed by law. Elite also seeks reasonable attorney fees and legal expenses for breach of contract.

### CAUSE OF ACTION II – FRAUD AND FRAUD IN THE INDUCEMENT

15. Elite incorporates the allegations set forth above as if fully set forth herein.

16. GDLS committed fraud against Elite by making promises to pay for goods delivered to GDLS when it had no present intention to pay for the goods. The representation that GDLS would pay for the goods delivered was false when made or made recklessly without knowledge of its truth. GDLS made the material misrepresentations with the intention that Elite would rely upon them. Elite justifiably relied upon these material representations when it inspected, inventoried, and sent goods valued at approximately $3.7 Million to GDLS. Elite would not have transferred the goods to GDLS had it known that the promise to pay was false, and GDLS had no present intention to pay for the goods it received from Elite.

17. As a direct proximate result of GDLS's fraudulent misrepresentation, Elite has been damaged by millions of dollars. In connection with this claim, Elite seeks all actual, consequential, incidental and exemplary damages as allowed by law.

### CAUSE OF ACTION III – QUANTUM MERUIT

18. Elite incorporates the allegations set forth in the paragraphs above.

19. In the alternative, Elite is entitled to recover from GDLS under a claim of quantum meruit. Elite furnished $3.7 Million in valuable goods and services to GDLS. GDLS accepted the goods and services without payment. The goods and services were furnished by Elite to GDLS under circumstances that GDLS knew or was reasonably notified that Elite, in performing, expected to be paid by GDLS.

## JURY DEMAND

20. Plaintiff demands a jury trial in this matter.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Elite prays that GDLS be cited to answer and appear and that Elite have judgment against them as follows:

(i) for actual consequential and incidental damages resulting from breach of contract, fraud, and quantum meruit;

(ii) for reasonable and necessary attorney's fees;

(iii) for pre- and post-judgment interest at the maximum lawful rate;

(iv) for expenses and costs;

(v) for exemplary and punitive damages as a result of the malicious and intentional fraud; and

(vi) for such other and further relief to which Elite may show itself entitled.

Respectfully submitted,

**FAUBUS KELLER & BURFORD LLP**


*/S/ ROBERT R. BURFORD*
_____
Robert R. Burford, Attorney-in-Charge
State Bar No.:  03371700
Federal Bar No.:  10828
1001 Texas Avenue, 11th Floor
Houston, Texas 77002
robert@faubuskeller.com
Telephone: (713) 222-6400
Facsimile: (713) 222-7240
ATTORNEY-IN-CHARGE FOR PLAINTIFF

*Of Counsel:*
Faubus Keller & Burford, LLP
Brian M. Keller
State Bar No.:  00784376
Federal Bar No.:  17095
Ada I. Ferrer
State Bar No.:  03371700
Federal Bar No.:  1198578
1001 Texas Avenue, 11th Floor
Houston, Texas 77002
brian@faubuskeller.com
ada@faubuskeller.com
Telephone: (713) 222-6400
Facsimile: (713) 222-7240