United States District Court
Southern District of Texas
**ENTERED**
December 18, 2015
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ELITE PRECISION FABRICATORS, §
INC., §
§
Plaintiff, §
§
v. § CIVIL ACTION NO. H-14-2086
§
GENERAL DYNAMICS LAND SYSTEMS, §
INC., §
§
Defendant. §

### MEMORANDUM OPINION AND ORDER

Elite Precision Fabricators, Inc. ("Plaintiff" or "Elite")
brings this action against Defendant General Dynamics Land Systems
("Defendant" or "General Dynamics") for breach of contract, fraud,
and quantum meruit.[1] Elite has also filed for Chapter 11
bankruptcy protection. In re: Elite Precision Fabricators, Inc.,
Debtor, Bankruptcy No. 14-31773 (Bankr. S.D. Tex. March 31, 2014).[2]
Elite filed an adversary proceeding in the bankruptcy court,[3]

---

[1] See Original Complaint, Docket Entry No. 1, pp. 4-6. Unless
otherwise specified, docket references are to the District Court
Docket.

[2] See id. at 1-2 ¶ 1; see Voluntary Petition for Bankruptcy,
Exhibit B to Motion to Compel Arbitration, Docket Entry No. 9-2
(Bankr. Docket Entry No. 1).

[3] See Debtor's Complaint to Avoid Transfers Pursuant to 11
U.S.C. § 548 and to Recover Such Transfers Pursuant to 11 U.S.C.
§ 550, Docket Entry No. 20, p. 1 (Adv. Docket Entry No. 1, p. 1).
(continued...)

Adversary No. 14-03289, which was consolidated with the district court case.[4]  Pending before the court are Defendant's Motions to Compel Arbitration (Docket Entry No. 9 and Adv. Docket Entry No. 12).  For the reasons explained below, the Motions will be granted.

## I.   <u>Background</u>

### A.   Procedural History

Elite filed a voluntary petition for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of Texas on March 31, 2014.[5]  Elite then sued General Dynamics in this court on July 21, 2014, for breach of contract, quantum meruit, and fraud.[6]  Elite instituted the adversary proceeding in bankruptcy court on September 3, 2014, seeking to

---

[3](...continued)
The withdrawn adversary record is Docket Entry No. 20 on the District Court Docket.

[4]<u>See</u> Order of September 18, 2015, granting Defendant General Dynamics Land Systems' Motion to Lift Abatement, Withdraw the Reference, and Consolidate Cases, Docket Entry No. 19.

[5]Voluntary Petition for Bankruptcy, Exhibit B to Motion to Compel Arbitration, Docket Entry No. 9-2 (Bankr. Docket Entry No. 1).

[6]<u>See</u> Original Complaint, Docket Entry No. 1.

avoid and recover transfers as a debtor in bankruptcy.[7]  Both cases were abated pending mediation ordered by the bankruptcy court.[8]

General Dynamics filed its Subject To and Without Waiving Arbitration Rights, Defendant's Motion to Lift Abatement, Withdraw the Reference, and Consolidate Cases ("Motion to Consolidate") on July 24, 2015.[9]  While that motion was pending, General Dynamics filed Motions to Compel Arbitration in the district court action and the adversary proceeding.[10]  General Dynamics also filed contemporaneous motions to dismiss in both actions.[11]  The Motion to Consolidate was granted on September 18, 2015, and the adversary proceeding was withdrawn from the bankruptcy court.[12]

---

[7]See Debtor's Complaint to Avoid Transfers Pursuant to 11 U.S.C. § 548 and to Recover Such Transfers Pursuant to 11 U.S.C. § 550, Docket Entry No. 20, pp. 1-6 (Adv. Docket Entry No. 1).

[8]See Order of November 13, 2014 (abating the case until such time as the mediation ordered by the bankruptcy court is concluded), Docket Entry No. 7; Order of November 18, 2014 (abating adversary proceeding until further order of the court), Docket Entry No. 20, p. 11 (Adv. Docket Entry No. 4).

[9]See Motion to Consolidate, Docket Entry No. 8.

[10]Motion to Compel Arbitration, Docket Entry No. 9; Motion to Compel Arbitration, Docket Entry No. 20, pp. 30-39 (Adv. Docket Entry No. 12).

[11]See Motion to Dismiss, Docket Entry No. 10; Motion to Dismiss, Docket Entry No. 20, pp. 79-91 (Adv. Docket Entry No. 13).

[12]See Order of September 18, 2015, granting Defendant General Dynamics Land Systems' Motion to Lift Abatement, Withdraw the Reference, and Consolidate Cases, Docket Entry No. 19.

**B.    Factual Background**

Elite is "a small, privately-owned metal fabrication shop located in Montgomery, Texas."[13]  This action stems from a business relationship between Elite, General Dynamics, and Tamor SR, an Israeli company.[14]   The Israeli government had contracted with General Dynamics for construction of armored personal carriers ("APCs") as part of a United States Foreign Military funded project.[15]  Due to the nature of the contract, subcomponents had to be manufactured by qualified U.S. manufacturers like Elite.[16]  Tamor America, a subsidiary of the Israeli company, acquired fifty percent of Elite so that Tamor could continue to participate in the contracts.[17]  Elite agreed to construct Namer kits, a subcomponent of the APCs, for General Dynamics (the "APC Contract").[18]

Tamor negotiated the contract with General Dynamics before Elite became involved, and the parties "grossly underestimated" the pricing for the kits.[19]  Thus, Elite and General Dynamics "abandoned the fixed price purchase order terms and moved first to a

---

[13]See  Plaintiff's  First  Amended  Complaint  ("Amended Complaint"), Docket Entry No. 13, p. 2 ¶ 6.

[14]See id. at 2-3.

[15]See id. ¶ 7.

[16]See id.

[17]See id.

[18]See id. at 3 ¶ 8.

[19]See id. ¶¶ 8-9.

progressive billing arrangement."[20]    According to the Amended Complaint, General Dynamics continued to push for production and promised payment without delivering.[21]    Finally, the financial strain was too great, and the parties allegedly entered a Work Stoppage Agreement (the "WSA") to end Elite's involvement with the APC project.[22]  Elite "agreed to list, organize and provide [General Dynamics] with work-in-progress, inventory, and items manufactured by third-party subcontractors.   In return [General Dynamics] promised to pay Elite for these goods and services."[23]    Elite performed, shipping six 18-wheeler truckloads of goods to General Dynamics, but General Dynamics never paid the final invoice of approximately $3.7 million, as required by the WSA's terms.[24]  Elite alleges that fraud and breach of contract by General Dynamics forced it into bankruptcy.[25]

## II.   <u>Discussion</u>

The arbitration language at issue appears in the "Purchase Order Terms and Conditions" that General Dynamics asserts were on its website and part of the APC Contract.[26]    General Dynamics

---

[20]<u>Id.</u> ¶ 9.

[21]<u>See</u> <u>id.</u> at 3-4 ¶ 10.

[22]<u>See</u> <u>id.</u> at 4 ¶ 11.

[23]<u>Id.</u> at 1 ¶ 1.

[24]<u>See</u> <u>id.</u> at 5 ¶ 13.

[25]<u>See</u> <u>id.</u> at 5-6 ¶ 15.

[26]<u>See</u> Motion to Compel Arbitration, Docket Entry No. 9, p. 2.
(continued...)

attached a later version of the Purchase Order Terms and Conditions to the Motion to Compel Arbitration.[27]   General Dynamics attached the terms that were in effect at the time the parties entered the APC Contract to its Reply in Support of Motion to Compel Arbitration and Motion to Dismiss ("Defendant's Reply in Support"), but the arbitration clauses are the same.[28]   The Declaration of James Boza, a Director of Supply Chain Management for General Dynamics, states that this document provided the terms and conditions for General Dynamics purchase orders from December 2010 to October 2011, and was available online at www.glds.com under "Main Menu/Suppliers."[29]   Paragraph 30 of the Purchase Order Terms and Conditions states in pertinent part:

> **ARBITRATION:** Any and all claims, disputes or other matters in question arising out of, or relating to, this Contract or the breach thereof shall be decided by arbitration in accordance with the then current

---

[26] (...continued)
Because the underlying agreement and facts are the same, the parties advance many of the same arguments for and against both Motions to Compel.  Thus, references to the Motion to Compel are to the Motion filed in the district court unless otherwise stated.

[27] General Dynamics Purchase Order Terms and Conditions, Exhibit D to Motion to Compel Arbitration, Docket Entry No. 9-4, p. 15 ¶ 29.

[28] Compare General Dynamics Purchase Order Terms and Conditions, Exhibit A to Exhibit 1 to Defendant's Reply in Support, Docket Entry No. 16-1, p. 15 ¶ 30 with General Dynamics Purchase Order Terms and Conditions, Exhibit D to Motion to Compel Arbitration, Docket Entry No. 9-4, p. 15 ¶ 29.

[29] See Declaration of James Boza, Exhibit 1 to Defendant's Reply in Support, Docket Entry No. 16-1, p. 2.

Commercial Arbitration Rules of the American Arbitration Association (the "AAA Rules").[30]

Elite argues that a valid arbitration agreement may not even exist.[31]  Elite also argues that its claims do not fall within the scope of the arbitration provision and that the claims originally asserted in the adversary proceeding are not arbitrable under Fifth Circuit precedent.[32]  Finally, Elite argues that General Dynamics waived its right to compel arbitration.[33]

**A.   Enforceability of the Arbitration Agreement**

    1.   <u>Applicable Law</u>

Under the Federal Arbitration Act ("FAA") an arbitration agreement in a contract evidencing a transaction involving interstate commerce is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; <u>see also id.</u> § 1.  Underlying the FAA is "the fundamental principle that arbitration is a matter of contract."  <u>AT&T Mobility LLC v. Concepcion</u>, 131 S. Ct. 1740, 1745

---

[30]Boza's Declaration states that all subsequent versions of the Purchase Terms and Conditions include the same or similar language regarding arbitration.  <u>See id.</u> at 2 ¶ 4.

[31]<u>See</u> Plaintiff's Response to Defendant's Motion to Compel Arbitration ("Plaintiff's Response to Motion to Compel"), Docket Entry No. 14, p. 5.  Plaintiff's Response to Defendant's Motion to Compel Arbitration in the adversary proceeding, Docket Entry No. 20, pp. 267-79 (Adv. Docket Entry No. 18), is essentially the same except reordered.  Thus, references are to the district court Response.

[32]<u>See</u> Plaintiff's Response to Motion to Compel, Docket Entry No. 14, pp. 5; 7-11.

[33]<u>See id.</u> at 6-7.

(2011) (internal quotation marks omitted); see Washington Mutual Finance Group, LLC v. Bailey, 364 F.3d 260, 264 (5th Cir. 2004) ("The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts — no more and no less."). Thus, "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." Concepcion, 131 S. Ct. at 1745 (internal citations omitted).

Accordingly, the first task of a court asked to compel arbitration is to determine whether the parties entered into a binding agreement to arbitrate the dispute. JP Morgan Chase & Co. v. Conegie, 492 F.3d 596, 598 (5th Cir. 2007). Making this determination requires the court to consider two issues: (1) validity -- i.e., "whether there is a valid agreement to arbitrate between the parties" -- and (2) scope -- i.e., "whether the dispute in question falls within the scope of that arbitration agreement." Id. Since arbitration agreements are matters of contract, the validity and scope of such an agreement are governed by state contract law. Morrison v. Amway Corp., 517 F.3d 248, 254 (5th Cir. 2008) ("The federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties. That determination is generally made on the basis of ordinary state-law principles that govern the formation of contracts." (citations and quotations omitted)).

If the parties have entered into a binding agreement to arbitrate the dispute, the court must determine whether any federal statute or policy renders the claims nonarbitrable. <u>Conegie</u>, 492 F.3d at 598. The party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity. <u>Carter v. Countrywide Credit Indus., Inc.</u>, 362 F.3d 294, 297 (5th Cir. 2004). A court must resolve all doubts concerning arbitrability in favor of arbitration. <u>Washington Mutual</u>, 364 F.3d at 263.

    2. <u>Analysis</u>

    (a) There Is a Valid Agreement to Arbitrate.

General Dynamics argues that the APC Contract is a valid arbitration agreement because it is "a written contract between two commercial parties that contains an explicit and conspicuous arbitration provision."[34] Elite argues that "[i]t is questionable whether a valid arbitration agreement exists" because General Dynamics has not provided proof the arbitration clause was part of the APC Contract and because the arbitration clause was not obvious or conspicuous.[35] General Dynamics responds that it has provided proof of the "Purchase Order Terms and Conditions" that were readily accessible on its website from December 2010 to October

---

[34]<u>See</u> Motion to Compel Arbitration, Docket Entry No. 9, p. 4 ¶ 12.

[35]<u>See</u> Plaintiff's Response to Motion to Compel, Docket Entry No. 14, p. 5 ¶¶ 12–13.

2011, the time period in which the parties entered the APC Contract.[36]

Elite's arguments that General Dynamics has not provided proof or verification that this is the June 2011 version of the website's terms and that "[t]here is no proof the website's terms contained an arbitration clause in June 2011"[37] are countered by the correct Purchase Order Terms and Conditions supported by James Boza's sworn affidavit.[38] Elite's response — after General Dynamics provided the correct document accompanied by the Boza Affidavit — only offers the same arguments.[39] General Dynamics has provided verification that these terms were on the company website and part of the APC Contract.

Elite also argues that the arbitration clause was "not obvious or conspicuous" in the purchase orders General Dynamics sent Elite, which contained twenty-six requirements and further refer to

---

[36]See GDLS'S Response to Plaintiff's Supplement to Arguments Regarding Defendant General Dynamics Land System's Motion to Compel Arbitration ("Defendant's Response to Plaintiff's Supplementary Response"), Docket Entry No. 23, pp. 1-2 ¶ 1.

[37]See Plaintiff's Response to Motion to Compel, Docket Entry No. 14, p. 5 ¶ 13.

[38]See Declaration of James Boza, Exhibit 1 to Defendant's Reply in Support, Docket Entry No. 16-1. All subsequent versions have included the same or similar arbitration language. Id. at 2 ¶ 4.

[39]See Plaintiff's Supplement to Arguments Regarding Defendant General Dynamic Land System's Motion to Compel Arbitration ("Plaintiff's Supplementary Response"), Docket Entry No. 22, p. 3 ¶ 9.

General Dynamic's website for the full terms and conditions.[40]   The
Blanket Purchase Agreement attached to Elite's Response is six
pages long.   A box at the bottom of each page labeled "Terms and
Conditions" says: "Please refer to the General Dynamics Land
Systems website at www.gdls.com Main Menu/Suppliers to find all
purchase order terms and conditions and detail language for quality
requirements."[41]   The arbitration clause is a separate numbered
paragraph in the Purchase Order Terms and Conditions titled in bold
and all capitals: **ARBITRATION**.[42]

"[T]he law presumes that a party knows and accepts the terms
of the contract he signs, and the law does not excuse a party's
failure to read the contract when he had an opportunity to do so."
LDF Constr., Inc. v. Texas Friends of Chabad Lubavitch, Inc., 459
S.W.3d 720, 730 (Tex. App.—Houston [14th Dist.] 2015, no pet. h.)
(citations omitted).   "That presumption includes documents
specifically incorporated by reference into the contract."   Id.
"[Plaintiff] presented no evidence that it lacked the opportunity
to read either the contract or [the incorporated document] before
signing the contract."   Id.   Consequently, [Plaintiff] is presumed

---

[40]See Plaintiff's Response to Motion to Compel, Docket Entry
No. 14, p. 5 ¶ 12.

[41]See Blanket Purchase Agreement, Exhibit B to Plaintiff's
Response to Motion to Compel, Docket Entry No. 14-2.

[42]See General Dynamics Purchase Order Terms and Conditions,
Exhibit A to Exhibit 1 to Defendant's Reply in Support, Docket
Entry No. 16-1, p. 15 ¶ 30.

to have known about, and accepted, the express language of incorporation on the face of the contract and the terms of the incorporated [document], even if the incorporated document was not attached and [Plaintiff] failed to obtain and read it." Id. Elite does not present argument or evidence that it lacked the opportunity to access the Purchase Order Terms and Conditions, expressly incorporated into the APC Contract, before signing.

The United States Supreme Court has held that "[c]ourts may not, however, invalidate arbitration agreements under state laws applicable only to arbitration provisions." Doctor's Assocs., Inc. v. Casarotto, 116 S. Ct. 1652, 1656 (1996). "Congress precluded states from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed upon the same footing as other contracts." Id. (internal quotations omitted). As Texas courts recognize, "even if Texas law imposed a specific conspicuousness requirement that might otherwise be applicable to this arbitration provision, such a law would likely be preempted by the FAA." See AutoNation USA Corp. v. Leroy, 105 S.W.3d 190, 199 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

Elite does not argue that the contract was otherwise unconscionable, or that any other contract defense applies. See Concepcion, 131 S. Ct. at 1746 (discussing the "savings clause" in 9 U.S.C. § 2 that "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as

fraud, duress, or unconscionability'"). The arbitration clause here is not hidden or ambiguous. The court concludes that Elite and General Dynamics entered a contract with a valid arbitration clause. See Munoz v. Luby's Inc., No. H-11-2984, 2011 WL 6291966, at *2 (S.D. Tex. Dec. 14, 2011) ("[w]hen the arbitration provision in an agreement is conspicuous, a party may not avoid its effect by asserting that he did not notice the provision or that it was not pointed out to him.") (internal quotations omitted).

   (b)   Elite's Claims Are Within the Scope of the
         Arbitration Agreement.

Elite argues that even if a valid arbitration agreement exists, it only covers those claims "arising out of, or relating to, this Contract" (emphasis Elite's), where Elite's claims arise out of the separate "WSA."[43]   According to Elite, after frequent changes in orders and specifications, the parties abandoned the terms of the outdated Purchase Orders and operated outside them.[44] Subsequently, the parties decided to end their relationship and negotiated the WSA, pursuant to which Elite delivered the $3.7

---

[43]See Plaintiff's Response to Motion to Compel, Docket Entry No. 14, pp. 5-6.  General Dynamics refers to this as the "alleged oral" WSA (Defendant's Reply in Support, Docket Entry No. 16, p. 4 ¶ 9) and Elite merely states that it was negotiated on or about August 29, 2013 and "in early September 2013, representatives of Elite and [General Dynamics] met to finish the WSA" (Amended Complaint, Docket Entry No. 13, pp. 4-5 ¶¶ 12-13).

[44]See Plaintiff's Response to Motion to Compel, Docket Entry No. 14, pp. 5-6 ¶ 15.

million in goods.[45]   General Dynamics argues that "the starting point for all of Elite's claims is the APC Contract and none of Elite's three claims . . . could be maintained 'without reference to' the APC Contract."[46]

"A dispute arises out of or relates to a contract if the legal claim underlying the dispute could not be maintained without reference to the contract."  Omni Pinnacle, LLC v. ECC Operating Services, Inc., 255 F. App'x 24, 25-26 (5th Cir. 2007) (internal quotations omitted).  The arbitration clause is broad, and the alleged WSA was negotiated to allow Elite to escape its continuing obligations under the APC Contract.[47]  The parties' relationship began and Elite manufactured products and incurred debt because of the APC Contract.  The claims underlying this dispute could not be maintained without reference to the APC Contract.[48]

---

[45]See id. at 6 ¶ 15.

[46]Motion to Compel Arbitration, Docket Entry No. 9, p. 4 ¶ 12.

[47]See Amended Complaint, Docket Entry No. 13, pp. 2-6. Defendant's Reply in Support, Docket Entry No. 16, pp. 3-5.  This instrument is nearly identical to the adversary proceeding Reply in Support of Motion to Compel Arbitration and Motion to Dismiss, Docket Entry No. 20, pp. 319-330 (Adv. Docket Entry No. 19).

[48]Elite admits that "[i]f [General Dynamics] produces a valid arbitration agreement similar to the one it has produced so far, the scope likely encompasses the instant dispute."  Plaintiff's Response to Motion to Compel, Docket Entry No. 14, pp. 11-12 ¶ 32. As discussed above, General Dynamics produced a copy of the Purchase Order Terms and Conditions in effect at the time of the APC Contract support by affidavit.

Elite argues that after consolidation the fraudulent transfer claims are separately brought by Elite as "debtor-in-possession" and not arbitrable.[49]  General Dynamics argues that arbitration of all of Elite's claims is mandatory after consolidation.[50]  General Dynamics quotes Paragraph 19 of the Purchase Order Terms and Conditions, which provides that if the Buyer terminates the Contract by written notice of default (under certain conditions), then Buyer may require Seller to transfer title and deliver to Buyer completed and partially completed goods.[51]  Payment for those goods "shall be in an amount agreed upon by Buyer and Seller; failure to agree to such amount shall be a dispute concerning a question of fact within the meaning of the paragraph of this order entitled 'Disputes.'"[52]  Thus, General Dynamics argues, "regardless of whether Elite is alleging . . . that [General Dynamics] breached its agreement to pay for the goods or whether Elite is alleging . . . that it failed to receive reasonably equivalent value for the

---

[49]See Plaintiff's Supplementary Response, Docket Entry No. 22, p. 2 ¶ 4.  These arguments are addressed further in Section II.A.2(c) infra.

[50]GDLS's Submission Regarding Effect of Consolidation on Motions to Compel Arbitration ("Defendant's Submission on Effect of Consolidation"), Docket Entry No. 21, pp. 2-4.

[51]See id. at 3-4 ¶ 3; Purchase Order Terms and Conditions, Exhibit A to Exhibit 1 to Defendant's Reply in Support, Docket Entry No. 16-1, p. 12 ¶ 19.

[52]Purchase Order Terms and Conditions, Exhibit A to Exhibit 1 to Defendant's Reply in Support, Docket Entry No. 16-1, p. 12 ¶ 19.

return of the goods, the 'dispute' over the return of the goods is covered by the broad arbitration language in Paragraph 30."[53]

Because of the presumption of arbitrability where a contract contains an arbitration clause, any ambiguities concerning the scope of arbitrable issues should be resolved in favor of arbitration. See Tittle v. Enron Corp., 463 F.3d 410, 418 (5th Cir. 2006). The parties' business relationship is predicated on the Purchase Order Terms and Conditions, which contain a broad arbitration clause. Unless a federal statute or policy renders Elite's claims nonarbitrable, these claims are within the scope of the parties' arbitration agreement.

>           (c)   No Federal Statute or Policy Renders Elite's Claims
>                 Nonarbitrable.

Elite argues that its §§ 548 and 550[54] claims, originally brought in the adversary proceeding, cannot be arbitrated because doing so would conflict with the Bankruptcy Code under Fifth Circuit precedent.[55] General Dynamics responds that the fraudulent transfer claims are arbitrable and that arbitration will avoid the

---

[53]See Defendant's Submission on Effect of Consolidation, Docket Entry No. 21, pp. 3-4 ¶ 3.

[54]11 U.S.C. § 550 provides that the trustee may recover "for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property" from certain transferees "to the extent that a transfer is avoided under section . . . 548 . . . of this title."

[55]See Plaintiff's Response to Motion to Compel, Docket Entry No. 14, pp. 7-11; Plaintiff's Supplementary Response, Docket Entry No. 22, pp. 2-3; 4-6.

possibility of inconsistent results on "virtually identical claims" and "give Elite speedy resolution of these claims" as requested.[56]

"[T]he party opposing arbitration carries the burden of showing that Congress intended in a separate statute to preclude a waiver of judicial remedies, or that such a waiver of judicial remedies inherently conflicts with the underlying purposes of that other statute." Rodriguez de Quijas v. Shearson/American Express, Inc., 109 S. Ct. 1917, 1921 (1989). The Fifth Circuit has held that arbitration of "core"[57] bankruptcy proceedings is not inherently irreconcilable with the Bankruptcy Code. In re Nat'l Gypsum Co., 118 F.3d 1056, 1067 (5th Cir. 1997). Rather, the "nonenforcement of an otherwise applicable arbitration provision turns on the underlying nature of the proceeding, i.e., whether the proceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether arbitration of the proceeding would conflict with the purposes of the Code." Id. See also In re Martinez, Bankr. No. 06-34385, 2007 WL 1174186, at *4 (Bankr. S.D. Tex. April 19, 2007) ("The Fifth Circuit has applied a two-prong test for determining when a bankruptcy court may decline to enforce an otherwise valid arbitration provision. Such discretion exists

---

[56] See Defendant's Submission on Effect of Consolidation, Docket Entry No. 21, p. 5 ¶¶ 5–6.

[57] "Core [bankruptcy] proceedings include . . . proceedings to determine, avoid, or recover fraudulent conveyances." 28 U.S.C. § 157(b)(2)(H).

only if: (1) the proceeding derives solely from the provisions of the Bankruptcy Code; and (2) arbitration of the proceeding would conflict with the purposes of the Bankruptcy Code."); In re Daisytek, 323 B.R. 180, 186-87 (N.D. Tex. 2005). General Dynamics asserts that Elite's adversary proceeding claims fail both prongs of the test.[58]

### i. Whether the Claims Derive Exclusively from the Provisions of the Bankruptcy Code.

Citing Trefny v. Bear Stearns Securities Corp., 243 B.R. 300, 315 (S.D. Tex. 1999), General Dynamics argues that Elite's claims are not core proceedings and do not derive exclusively from the Bankruptcy Code, and therefore fail the first prong of the test.[59] Trefny, a co-trustee appointed under the Securities Investor Protection Act ("SIPA") to preside over the liquidation of MBM Investment Corporation, sued Bear Stearns in an adversary proceeding in bankruptcy court. Id. at 306. Trefny alleged causes of action for conversion, common law fraud, statutory fraud, DTPA violations, Texas Securities Act violations, and civil conspiracy under Texas law, as well as federal civil claims. Id. After Bear Stearns moved to dismiss or stay the proceeding because of arbitration agreements, Trefny filed a second amended complaint adding a Bankruptcy Code § 548 claim for fraudulent transfer. Id.

---

[58]Motion to Compel Arbitration, Docket Entry No. 20, p. 32 ¶ 11; pp. 34-36 (Adv. Docket Entry No. 12, p. 3 ¶ 11; pp. 5-7).

[59]Id. at 35 ¶ 18 (Adv. Docket Entry No. 12, p. 6 ¶ 18).

The bankruptcy court refused to dismiss or stay the adversary proceeding, and Bear Stearns appealed. <u>Id.</u> at 307.

The district court applied the two-part test from <u>National Gypsum</u>. <u>Id.</u> at 315. "[T]his court must analyze each cause of action Trefny asserts to determine whether that claim should proceed in arbitration or in the bankruptcy court." <u>Id.</u> at 318. After a detailed discussion of the purposes of SIPA, the court held that "[i]n this case, Trefny seeks essentially the same relief [in his § 548 claim that] he seeks through his state law fraud and tort claims against Bear Stearns: to recover the losses resulting from the alleged misrepresentations and other misconduct that led to the purchase of the Mannai Bonds." <u>Id.</u> at 322. <u>See</u> <u>also</u> <u>In re Winimo Realty Corp.</u>, 270 B.R. 108, 124 (S.D.N.Y. 2001) (finding that the debtor's claim for § 548 fraudulent transfer and related contract-based claims were not "created by the Bankruptcy Code; they are simply contractual claims derivative of pre-bankruptcy agreements"). General Dynamics thus argues that the claims at issue fail the first prong of the <u>National Gypsum</u> test because "[t]his Adversary Proceeding is nothing more than Elite's breach of contract claims repackaged as a fraudulent transfer claim under § 548. Elite's § 548 claim is not a proceeding derived exclusively from the Bankruptcy Code, but rather a claim arising out of the

breach of a prepetition contract that could have been resolved outside the bankruptcy context."[60]

General Dynamics also argues that Elite's § 548 claim is not a core bankruptcy proceeding under the Supreme Court's holding in <u>Executive Benefits Insurance Agency v. Arkison</u>, 134 S. Ct. 2165, 2172-74 (2014).[61]   In <u>Executive Benefits</u>, the Supreme Court held that when, under the reasoning of <u>Stern v. Marshall</u>, 131 S. Ct. 2594 (2011), Article III of the Constitution prohibits a bankruptcy court from entering a final judgment on a bankruptcy-related claim, the relevant statute allows the bankruptcy court to issue proposed findings of fact and conclusions of law for <u>de novo</u> review by the district court.   <u>Executive Benefits</u>, 134 S. Ct. at 2168.   General Dynamics argues that "under the severability doctrine, claims which are classified as core under 28 U.S.C. § 157(b)(2), but that are outside of the bankruptcy court's constitutional authority to decide to judgment are governed under § 157(c) and treated as non-core claims."[62]   <u>See In re Gulf Fleet Holdings, Inc.</u>, Bankr. No.

---

[60]Motion to Compel Arbitration, Docket Entry No. 20, p. 36 ¶ 19 (Adv. Docket Entry No. 12, p. 7 ¶ 19).

[61]<u>Id.</u> at 36-37 ¶ 20 (Adv. Docket Entry No. 12, pp. 7-8 ¶ 20).

[62]<u>Id.</u>   The Supreme Court has also said that "fraudulent conveyance actions by bankruptcy trustees . . . . constitute no part of the proceedings in bankruptcy but concern controversies arising out of it." <u>Granfinanciera, S.A. v. Nordberg</u>, 109 S. Ct. 2782, 2798 (1989) (internal quotations and citations omitted)). Such claims "are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt
(continued...)

10-50713, 2014 WL 4560441, at *1 (Bankr. W.D. La. Apr. 2, 2014) ("Although fraudulent transfer claims under section 548 are statutorily core claims, most courts have held that a bankruptcy court does not have authority to enter final orders on these claims under Stern."). The Fifth Circuit stated in In re Gandy, 299 F.3d 489, 495 (5th Cir. 2002), that "it is generally accepted that a bankruptcy court has no discretion to refuse to compel the arbitration of matters not involving 'core' bankruptcy proceedings under 28 U.S.C. § 157(b) . . . ."[63] (citing National Gypsum, 118 F.3d at 1067). Elite responds that Stern was a narrow opinion, and Executive Benefits did not speak to the arbitrability of Stern claims.[64] See Shipley Garcia Enterprises, LLC v. Cureton, No.

---

[62](...continued)
corporation to augment the bankruptcy estate . . . ."   Id. (discussing matters of public versus private right).

[63]Courts since Gandy have concluded that the Fifth Circuit has not precluded a court's discretion to deny arbitration of non-core claims if they meet both prongs of the National Gypsum test. See, e.g., In re Huffman, 486 B.R. 343, 358 (S.D. Miss. 2013) ("It does not appear that the Fifth Circuit has ever ruled that the arbitration of a noncore proceeding would produce an inherent conflict between the Bankruptcy Code and the FAA. The Fifth Circuit, however, has not foreclosed the possibility, that is, that a bankruptcy court could deny arbitration of a noncore proceeding if the opposing party could show it would cause an inherent conflict of interest with the Bankruptcy Code.").

[64]See Plaintiff's Response to Motion to Compel, Docket Entry No. 14, p. 11 ¶¶ 29-30. "Vitally, the core v. non-core question is not dispositive and only 'conflates the inquiry [of arbitrability] . . . with the mere identification of the jurisdictional basis of a particular bankruptcy proceeding.'" (quoting National Gypsum, 118 F.3d at 1067). Id. at 8 ¶ 20.

M-12-89, 2012 WL 3249544, at *10 (S.D. Tex. Aug. 7, 2012) ("In sum, although <u>Stern</u> determined that a bankruptcy court may not constitutionally enter final judgment on certain counterclaims under § 157(b)(2)(C), it did not rewrite the statute and reclassify those claims as 'related to' proceedings under §§ 157(c)(1) or 1334(c).").[65]

Elite argues that "the Fifth Circuit has already determined that the §§ 548 and 550 claims relevant here are not arbitrable under <u>National Gypsum</u>, making this analysis fairly straightforward; [<u>Gandy</u>] . . . is instructive and nearly identical."[66] In <u>Gandy</u>, 299 F.3d at 493, the Debtor sued business partners and partnerships in state court for breach of fiduciary duty, negligence, fraud, constructive trust, and breach of contract. The Debtor (as debtor-in-possession) subsequently filed for bankruptcy, and the state suit was removed to the bankruptcy court as an adversary proceeding. <u>Id.</u> The Debtor filed a separate adversary action — including causes of action to avoid transfers pursuant to Bankruptcy Code §§ 544, 548, and 550 — and the bankruptcy court allowed consolidation into a single Third Amended Complaint. <u>Id.</u> The defendants moved to compel arbitration (which the state court had granted prior to the bankruptcy filing and removal), but the bankruptcy court denied the motion, finding that the Third Amended

---

[65] <u>See</u> <u>id.</u> at 8 ¶ 23.

[66] <u>Id.</u>

Complaint essentially sought avoidance of fraudulent transfers. Id. The district court affirmed, and the defendants appealed to the Fifth Circuit, which also affirmed. Id.

Elite argues that its situation is "nearly identical" to the Debtor's in Gandy.[67] Elite, as debtor-in-possession, has brought §§ 548 and 550 claims, which are only available to it in bankruptcy, using the "strong arm" powers of the trustee.[68] "Elite's central claim is simply that it delivered goods to [General Dynamics], did not receive equivalent (or any) value, and therefore seeks to avoid the transfer and recover its value. These claims are brought for the benefit of the creditors, not Elite, and any recovery will go to ultimately go to the unsecured creditors."[69] Elite distinguishes the nonbankruptcy causes of action as "peripheral and seek[ing] to punish [General Dynamics] for its bad conduct," but argues the bankruptcy claims predominate.[70]

General Dynamics argues that Gandy is factually distinguishable.[71] In Gandy, the challenged transactions were

---

[67]See id. at 9 ¶ 25.

[68]See id.

[69]Id.; see also Plaintiff's Supplementary Response, Docket Entry No. 22, p. 2 ¶ 4.

[70]See Plaintiff's Response to Motion to Compel, Docket Entry No. 14, p. 9 ¶ 25.

[71]Defendant's Reply in Support, Docket Entry No. 16, pp. 8-9 ¶ 17.

transfers of ownership interests made prior to and during a company's liquidation in order to conceal the value of the Debtor's ownership interest in the company and to avoid triggering a partnership provision that would have allowed for the general partner's ouster.  See <u>Gandy</u>, 299 F.3d at 492.  The consolidated adversary proceeding was the only pending action related to the underlying transactions.  See <u>id.</u>  The court found that "[u]nlike the situation in <u>Trefny</u>, the transactions alleged to be fraudulent in this case are not subject to the same kind of attack by Debtor outside of bankruptcy."  <u>Id.</u> at 497.  In contrast, Elite is attacking the transactions outside of bankruptcy and seeking recovery of the same amounts that it seeks in its fraudulent transfer claims.  Thus, General Dynamics argues, "[u]nlike the transfers in <u>Gandy</u> that could only be unwound using the avoidance and recovery powers of the Bankruptcy Code, Elite's Bankruptcy Court 'fraudulent transfer claims' are carbon copies of its run-of-the-mill breach of contract claims pending before this Court."[72]

<u>Trefny</u> is distinguishable from Elite's situation, in that the trustee failed to plead a proper § 548 claim because it did not allege a transfer of property of the debtor.  <u>Trefny</u>, 243 B.R. at 322; see <u>Gandy</u>, 299 F.3d at 496.  However, <u>Gandy</u> held that "[w]hile some of Debtor's remaining claims do involve her pre-petition legal

---

[72]<u>Id.</u> at 9 ¶ 18.

or equitable rights, the bankruptcy causes of action predominate. The heart of Debtor's complaint concerns the avoidance of fraudulent transfers and implicates non-bankruptcy contractual and tort issues 'in only the most peripheral manner.'" Gandy, 299 F.3d at 497 (citing National Gypsum, 118 F.3d at 1067).  In contrast, both of Elite's Complaints establish that its claims implicate non-bankruptcy contractual and tort claims in more than a "peripheral manner."  "The fact that Plaintiff filed for bankruptcy does not change the actuality of how the claim arose."  In re Bailey, 217 B.R. 523, 524-26 (Bankr. E.D. Tex. 1997).[73]  Even analyzed as "core" for these purposes, Elite's claims fail the first prong of National Gypsum because they derive from Elite's pre-petition legal rights rather than entirely from federal rights conferred by the Bankruptcy Code.  See Gandy, 299 F.3d at 495.  Additionally, as discussed below, the court concludes that Elite's claims fail the second prong of the National Gypsum test.

---

[73]In In re Bailey, 217 B.R. 523, the bankruptcy court discussed National Gypsum and the Fifth Circuit's finding that there is no inherent conflict between the Code and the FAA.  There, the debtor had a two-year employment agreement containing an arbitration clause.  Id. at 524-25.  The debtor filed for Chapter 13 bankruptcy and then commenced an adversary proceeding against his employer.  Id. at 525.  He alleged that his employer breached the agreement by firing him without cause.  Id.  The court explained that "[t]he fact that Plaintiff filed for bankruptcy does not change the actuality of how the claim arose.  Furthermore, compelling arbitration would not conflict with the purpose of the Code."  Id. at 526.  The court did not discuss a claim under any specific section of the Bankruptcy Code, however.  See id. at 525.

ii.  **Whether Arbitration of the Proceeding Would
Conflict With the Purposes of the Code.**

Even if the adversary proceeding claims are derived entirely
from federal rights conferred by the Bankruptcy Code, the court's
discretion to deny enforcement of an arbitration clause arises only
when enforcement would conflict with the purposes of the Code.  See
Gandy, 299 F.3d at 498.  For example, the Gandy court was concerned
about "piecemeal litigation" and "wasteful and inefficient"
"parallel proceedings" that interfere with the "expeditious and
equitable distribution of the assets of the Debtor's estates."  Id.
at 498-99.  General Dynamics argues that, in contrast, arbitration
would allow Elite's claims to be heard efficiently together.[74]

The  Trefny court held that even if Trefny had pleaded a § 548
claim that was not inherited from the debtor's prepetition
property, but was rather a right created solely by the Bankruptcy
Code, it still failed the National Gypsum test.  "It would be an
abuse of discretion to find such a conflict between the parties'
contractual arbitration rights and the [FAA] on the one hand, and
the Bankruptcy Code on the other hand, so as to preclude
arbitration in this case."  Trefny, 243 B.R. at 323.  General
Dynamics argues that many of the factors that the Trefny court
relied on in its holding are present in Elite's adversary

---

[74]See Defendant's Reply in Support, Docket Entry No. 16, p. 9
¶ 19.

-26-

proceeding claims.[75]  The court found that Trefny's claims did not involve important bankruptcy policies; that Trefny did not assert claims against the debtor's estate; that resolution of the claims did not require allocating property of the estate among creditors; that resolution of the claims did not require interpreting whether an order of discharge had been violated; that Trefny's claims arose prepetition and could have been asserted prepetition; and that resolution of the claims did not require interpreting any technical provisions of the Code.  Id. at 325.  The court concluded that "[t]he basis of Trefny's claims is that Bear Stearns committed fraud or actionable negligence.  Arbitration of this issue does not implicate or conflict with the bankruptcy law or policies."  Id. Here, Elite's claims also arose and could have been asserted prepetition.  And Elite has not argued that resolution of its claims will involve interpreting technical Bankruptcy Code provisions or whether an order of discharge has been violated.

Elite argues that the Fifth Circuit gave three additional reasons for not sending the Gandy claims to arbitration: "(1) the claims represented nearly the entire debtor's estate; (2) the determination implicated the central purpose of bankruptcy: an expeditious and equitable distribution of assets; and (3) the party compelling arbitration had filed a proof of claim, triggering the

---

[75]Motion to Compel Arbitration, Docket Entry No. 20, p. 37 ¶ 21-22 (Adv. Docket Entry No. 12, p. 8 ¶ 21-22).

bankruptcy procedures."[76]   According to Elite: (1) its claims against General Dynamics represent the entire estate that can be awarded to the unsecured creditors; (2) General Dynamics has repeatedly tried to prevent Elite from expeditiously concluding its bankruptcy and as a result, this case has remained open and untried for a year;  and (3) General Dynamics filed a proof of claim and objected to Elite's Confirmation Plan, it simply later withdrew the proof of claim (but not its objection) "in the face of having it stricken for failure to timely file."[77]

Elite's arguments distinguish this case from <u>Gandy</u>; Elite admits that the claims against General Dynamics represent the entire estate that can be awarded to unsecured creditors, not the entire bankruptcy estate.  Also in <u>Gandy</u>, the defendants had moved the proceeds of the transfers to foreign "off-shore" grantor trusts whose trustees claimed that they would not honor the jurisdiction of the United States.  <u>Gandy</u>, 299 F.3d at 498-99.  Elite argues that General Dynamics has engaged in delay tactics, but not behavior that would remove transfer property or funds from this jurisdiction entirely.  General Dynamic's proof of claim was withdrawn per stipulation of the parties and "[t]he withdrawal of the [General Dynamics] Proof of Claim and the [Debtor's] Objection

---

[76]Plaintiff's Response to Motion to Compel, Docket Entry No. 14, pp. 9-10 ¶ 26 (citing <u>Gandy</u>, 299 F.3d at 498-99).

[77]<u>Id.</u>

shall be treated as if neither of these documents had ever been filed."[78]   Thus, the additional reasons advanced in <u>Gandy</u> for denying the motion to compel arbitration do not exist here.

General Dynamics argues that the district court proceeding is not "secondary" to the adversary proceeding.   The district court case was first-filed, and both complaints allege nearly identical facts, will involve common discovery and legal issues, and seek recovery of the same damages.[79]   Thus, although Elite advanced different legal theories, all claims, now consolidated into one action, are based on breach of contract.[80]   Elite alleges it is entitled to $3.7 million (plus actual, consequential, incidental,

---

[78]<u>See</u> Stipulation and Agreed Order Regarding the GDLS Proof of Claim, Bankr. Docket Entry No. 154, p. 2 ¶ 6.

[79]<u>See</u> Defendant's Reply in Support, Docket Entry No. 16, pp. 2, 3. Elite's confirmed plan of reorganization "provides that 'the Debtor shall continue to prosecute the GDLS Litigation for the benefit of Class 9' (Elite's unsecured creditors)." <u>Id.</u> at 3. General Dynamics argues that it is not true that the common-law claims benefit Elite while the fraudulent transfer claims are brought by Elite as debtor-in-possession and benefit the estate. While not relevant to the contractual arbitration right, recovery on either claim will go to Elite's creditors, not Elite. <u>See</u> Defendant's Response to Plaintiff's Supplementary Response, Docket Entry No. 23, pp. 2-3 ¶¶ 2-3. "But to the extent Elite is now maintaining that it is entitled to prosecute one of the lawsuits for its own benefit, established Fifth Circuit case law would prevent this about face. <u>See id.</u> ¶ 3 (citing <u>B.R. Eubanks, M.D. v. Federal Deposit Ins. Corp.</u>, 977 F.2d 166, 174 (5th Cir. 1992)).

[80]<u>See</u> Defendant's Reply in Support, Docket Entry No. 16, p. 3 ¶ 5.

and exemplary damages) on the district court claims,[81] and that it failed to receive "reasonably equivalent value" for the $3.7 million worth of transferred goods in the fraudulent transfer claims.[82] Elite does not explain how it could recover twice for the same injury, and the court concludes that arbitrating all claims will further, rather than conflict with, a central purpose of the Code: the expeditious and equitable distribution of the assets of the debtor's estate. See Gandy, 299 F.3d at 498.

Elite argues arbitration "would be particularly dangerous given the consolidation" and is concerned that it cannot receive a proper decision on its bankruptcy claims in arbitration.[83] A court "has discretion to deny enforcement of arbitration agreements when arbitration, as a practical matter, would result in the loss of a party's legal rights." In re Huffman, 486 B.R. 343, 364 (Bankr. S.D. Miss. 2013). Elite argues the fraudulent transfer claim "has no scienter/intent requirement" and simpler elements than common law fraud, so they must be treated differently.[84] Also, the Huffman

---

[81]See Amended Complaint, Docket Entry No. 13.

[82]See Debtor's Complaint to Avoid Transfers Pursuant to 11 U.S.C. § 548 and to Recover Such Transfers Pursuant to 11 U.S.C. § 550, Docket Entry No. 20, pp. 4-5 (Adv. Docket Entry No. 1, pp. 4-5).

[83]Plaintiff's Supplementary Response, Docket Entry No. 22, p. 6 ¶ 18.

[84]Id. (citing In re Allou Distrib., 387 B.R. 365, 403 (Bankr. E.D.N.Y. 2008)).

court denied arbitration of a § 548 claim after <u>Stern</u>, stating: "of most concern to the Court is that arbitrators on the roster of the [AAA] need not be attorneys, much less attorneys experienced in bankruptcy law." <u>Huffman</u>, 486 B.R. at 364.

<u>Huffman</u> is distinguishable. First, the arbitration clause here requires the arbitrator to be an attorney with "experience and familiarity with government contracts and government contract law."[85] Second, <u>Huffman</u> involved a debtor who had been experiencing financial difficulty and entered a contract with a "debt relief agency" that contained an arbitration clause. <u>Id.</u> at 349-50. The debtor was harassed by creditors for payment and sued by a creditor, with no help from the agency. <u>Id.</u> at 351. She filed for Chapter 7 bankruptcy, also without the help of the agency. <u>Id.</u> The bankruptcy trustee then filed an adversary complaint against the agency, asserting five causes of action: Turnover of Estate Property, Fraudulent Transfers, Accounting, 11 U.S.C. § 526, and Fraud. <u>Id.</u> at 351. The court refused to compel arbitration, holding that "[w]hile the scope of the arbitration clause is broad, and thus favors arbitration, it applies only to disputes between the Debtor and Legal Helpers. Further, the Trustee's claims center upon four core issues and only one noncore issue." <u>Id.</u> at 365.

---

[85]Purchase Order Terms and Conditions, Exhibit A to Exhibit 1 to Defendant's Reply in Support, Docket Entry No. 16-1, p. 15 ¶ 30.

Here, the parties had an ongoing buyer/seller business relationship based on a contract containing an arbitration clause. The district court complaint and adversary complaint are based on the same facts: that General Dynamics breached the contract and failed to pay for goods that Elite manufactured for and transferred to General Dynamics. See Huffman, 486 B.R. at 349 (accepting the factual allegations of the complaint as true for purposes of deciding the motion to compel arbitration). Elite is a party to the arbitration agreement, rather than a non-signatory trustee. See id. at 365. Also, only one claim[86] in this consolidated proceeding is statutorily core under the Bankruptcy Code; the other three are not.

In re Rarities Group, Inc., 434 B.R. 1 (D. Mass. 2010), was distinguished by the Huffman court.[87] Huffman, 486 B.R. at 362-63. That court found that the bankruptcy judge erred in refusing to compel arbitration while applying the National Gypsum test. Rarities Group, 434 B.R. at 11.

> In this case, the Trustee is bringing claims based, for the most part, on prepetition transactions and contracts. The Trustee's fundamental claims are essentially based on Heritage's alleged pre-bankruptcy wrongful conduct and breaches of agreements with Paul and/or RGI. Sorting out the business and property disputes underlying the

---

[86]The § 550 claim is the "liability of transferee of avoided transfer" under § 548. See supra note 54.

[87]The Huffman court did note that: "[a]s to the Trustee's fraudulent transfer claim, courts have frequently overridden arbitration agreements." Huffman, 486 B.R. at 362.

> adversary proceedings will be focused on the parties'
> respective rights and obligations under their
> pre-bankruptcy commercial relationship. While some of
> the claims invoke remedies explicitly made available by
> the Bankruptcy Code, there is nothing in the record that
> would suggest that the goals of the Code would be
> jeopardized by permitting the claims to be resolved in
> arbitration.

<u>Id.</u> at 10–11.[88] Elite's plan of reorganization has been confirmed

in the bankruptcy proceeding, and "[s]orting out the business and

property disputes underlying the [consolidated] proceeding will be

focused on the parties' respective rights and obligations under

their pre-bankruptcy commercial relationship." <u>See id.</u> at 11.

"The purpose of allowing a trustee to avoid such transfers is

to prevent the debtor from disposing of his property with the

intent or effect of placing it beyond the reach of the debtor's

creditors." <u>Trefny</u>, 243 B.R. at 322. Elite transferred property

to General Dynamics that it manufactured as part of an ongoing

business arrangement, not for the purpose of "placing it beyond the

reach of [Elite's] creditors." Any recovery in this consolidated

case will go to its creditors. "A party wishing to defeat

application of the FAA bears the burden of demonstrating 'that

Congress intended to preclude a waiver of judicial remedies for the

---

[88]The court noted that "[n]either debtor is reorganizing, there
is no plan to confirm, and liquidations of both estates started
long ago. There do not appear to be any other creditors or third
parties in these proceedings whose interests might be affected if
the claims are resolved by arbitration rather than by a bankruptcy
judge." <u>Id.</u> at 11.

statutory rights at issue.'" <u>Gandy</u>, 299 F.3d at 495 (quoting <u>Shearson/American Express, Inc. v. McMahon</u>, 107 S. Ct. 2332, 2337 (1987)).  Elite has not met this burden, nor established that arbitration would jeopardize the objectives of the Bankruptcy Code. <u>See</u> <u>National Gypsum</u>, 118 F.3d at 1069 (the purposes of the Code include "the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders").  Having found that the Bankruptcy Code claims fail the <u>National Gypsum</u> test, the court concludes that arbitration of all claims in this consolidated action is appropriate.

**B.    Waiver**

   1.    <u>Applicable Law</u>

   "A party waives arbitration by seeking a decision on the merits before attempting to arbitrate." <u>In re Mirant</u>, 613 F.3d 584, 589 (5th Cir. 2010) (quotations omitted).  "Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." <u>Republic Ins. Co. v. PAICO Receivables, LLC</u>, 383 F.3d 341, 344 (5th Cir. 2004) (quoting <u>Subway Equip. Leasing Corp. v. Forte</u>, 169 F.3d 324, 326 (5th Cir. 1999)).  The party claiming that the right to arbitrate has been waived bears a heavy burden because there is a strong presumption against finding a waiver of arbitration. <u>Id.</u>;

-34-

<u>Steel Warehouse Co., Inc. v. Abalone Shipping Ltd. of Nicosai</u>, 141
F.3d 234, 238 (5th Cir. 1998).

Invoking the judicial process involves, "at the very least,
engag[ing] in some overt act in court that evinces a desire to
resolve the arbitrable dispute through litigation rather than
arbitration." <u>Republic Ins.</u>, 383 F.3d at 344 (quoting <u>Subway</u>, 169
F.3d at 329).  If the court finds that the party seeking to compel
arbitration has invoked the judicial process, it evaluates whether
the other party has been prejudiced, considering "delay, expense,
and damage to a party's legal position." <u>Mirant</u>, 613 F.3d at 591.

 2. <u>Analysis</u>

Elite argues that General Dynamics waived its right to compel
arbitration because "[General Dynamics] has pleaded for the
District Court and a jury of its peers to try this case, and Elite
and its innocent creditors have and stand to be harmed
significantly by its delay tactics."[89] Elite asserts that General
Dynamics cannot meaningfully plead for an Article III court and
jury in its Motion to Consolidate on one hand yet demand
arbitration on the other.[90] General Dynamics argues that the
Consolidation Order does not adversely impact its Motions to Compel

----

[89]<u>See</u> Plaintiff's Response to Motion to Compel, Docket Entry
No. 14, p. 6 ¶ 16.  <u>See also</u> Plaintiff's Supplementary Response,
Docket Entry No. 22, pp. 7-8.

[90]<u>See</u> Plaintiff's Response to Motion to Compel, Docket Entry
No. 14, p. 4 ¶ 10; p. 6 ¶ 17.

Arbitration, and that a litigant "does not lose its right to arbitration by participating in litigation in order to protect itself in the event its request for arbitration is ultimately denied."[91]

Elite cites <u>Mirant</u> in support of its arguments, but General Dynamics argues that <u>Mirant</u> is distinguishable.[92]   In <u>Mirant</u>, the defendant moved to compel arbitration only after the district court had partially denied its third motion to dismiss.   <u>Mirant</u>, 613 F.3d at 590.   The third motion sought dismissal with prejudice and asserted affirmative defenses.   <u>Id.</u> at 589.   A request for dismissal with prejudice for failure to state a claim seeks a decision on the merits.   <u>See id.</u>   Further, affirmative defenses of waiver and release "admit the initial sufficiency and completeness of the claim while asserting other grounds for avoiding the normal consequences of that concession."   <u>Id.</u> (quotations omitted).   "By seeking to prove its own allegations to the district court, [the defendant] invoked the judicial process to a greater degree than it would have by filing a mere 'perfunctory motion to dismiss.'"   <u>Id.</u> (quoting <u>Williams v. Cigna Fin. Advisors, Inc.</u>, 56 F.3d 656, 661 (5th Cir. 1995)).   The defendant did not initially present its motion to compel as an alternative to the motion to dismiss.   <u>Id.</u>

---

[91]Defendant's Submission on Effect of Consolidation, Docket Entry No. 21, p. 2 ¶ 1.

[92]Defendant's Reply in Support, Docket Entry No. 16, p. 5 ¶ 10.

The court held that, based on a number of factors, the defendant sought a decision on the merits before the district court and thus substantially invoked the judicial process.  Id. at 589-91.  In contrast, in both the adversary proceeding and the district court action, General Dynamics filed its Motions to Dismiss concurrently with its Motions to Compel Arbitration.  Both seek dismissal first because Elite and General Dynamics agreed to mandatory arbitration of any disputes arising out of the parties' Contract.[93]  The Mirant court stated that "[t]his case is easily distinguished from the scenario where a party demonstrates its preference to arbitrate by submitting a dispositive motion only as an alternative to a motion to compel arbitration.'"  Id. at 590.

General Dynamics argues that it filed the Consolidation Motion because "it is entitled to have an Article III adjudication of all issues raised by the Adversary Proceeding—including the question of whether Elite's claims are subject to the parties' contractual agreement to arbitrate."[94]  General Dynamics has participated in this litigation minimally and acted protect its rights.  See Steel Warehouse Co., 141 F.3d at 238 ("Appellants had to participate in the litigation in order to protect themselves if the district court chose not to stay the proceedings.").  The Motion to Consolidate

_____

[93]Motion to Dismiss, Docket Entry No. 20, p. 83 (Adv. Docket Entry No. 13, p. 5); Motion to Dismiss, Docket Entry No. 10, p. 1 ¶ 1.

[94]Defendant's Reply in Support, Docket Entry No. 16, p. 6 ¶ 12.

was subject to the right to compel arbitration and did not seek judicial decision on the merits.[95]   The Motions to Dismiss were filed because of the arbitration agreement and concurrently with the Motions to Compel Arbitration.   General Dynamics has not waived its right to arbitrate this dispute.

Elite also argues that General Dynamics has engaged in "delay tactics" that have prejudiced Elite and its creditors by waiting "until two months before the pre-trial conference in the Adversary Proceeding, and mere months from trial, to make its arbitration demand."[96]   Elite asserts that the parties "have exchanged expert reports on value of the goods provided to [General Dynamics] and the Adversary Proceeding is ready for trial."[97]   For Elite's unsecured creditors, "any recovery is likely all they will receive, and they are assuredly ready to move on."[98]   By requesting an Article III court and jury, General Dynamics obtained consolidation, withdrawal of the reference, and further delay, and it was able to "maneuver this case out of a forum it did not

---

[95]See Motion to Consolidate, Docket Entry No. 8.

[96]See Plaintiff's Response to Motion to Compel, Docket Entry No. 14, p. 7 ¶ 18.

[97]See id.

[98]Plaintiff's Supplementary Response, Docket Entry No. 22, p. 8 ¶ 22.

like."[99]   Elite argues that General Dynamics thus invoked the judicial process and prejudiced Elite and its creditors.[100]

In <u>Mirant</u>, the Fifth Circuit recognized that although "the mere failure to assert the right to demand arbitration does not alone translate into a waiver of that right, such failure does bear on the question of prejudice." <u>Mirant</u>, 613 F.3d at 591.   The <u>Mirant</u> defendant argued that it made a timely demand for arbitration "by listing the right to compel arbitration as an affirmative defense in its answer and reserving that right in its motions to dismiss." <u>Id.</u>   The court disagreed, because the defendant waited eighteen months to move to compel while seeking a dismissal with prejudice.   <u>Id.</u>   General Dynamics' situation is different than that of the <u>Mirant</u> defendant.   General Dynamics filed Motions to Compel Arbitration at the same time that it filed its Motions to Dismiss: shortly after asking the court to lift the abatement when mediation ordered by the bankruptcy court failed.[101]

Elite also argues that the window to demand arbitration before waiver may be shorter in the bankruptcy setting.[102]   See <u>Hallwood Group Inc. v. Balestri</u>, No. 3:10-CV-1198-K, 2010 WL 4274754, at *3

---

[99]<u>See</u> <u>id.</u> at 7 ¶¶ 19, 21.

[100]<u>See</u> <u>id.</u> at 7-8.

[101]<u>See</u> Motion to Consolidate, Docket Entry No. 8, pp. 2-3.

[102]<u>See</u> Plaintiff's Response to Motion to Compel, Docket Entry No. 14, p. 7 ¶ 19.

(N.D. Tex. Oct. 21, 2010) (affirming bankruptcy court holding that where a party waited "almost a year" to demand arbitration, the delay was too long and "would prejudice all of the creditors of the bankruptcy estate who are waiting on payment"). In <u>Hallwood</u>, the defendant "participated extensively" in the adversary proceeding, taking three depositions, participating in fourteen more, and filing counterclaims for nine months before demanding arbitration. <u>Id.</u> General Dynamics has resisted Elite's attempts to initiate discovery[103] and has not filed any counterclaims.

Elite also argues that General Dynamics should have asserted the arbitration right during the Chapter 11 proceeding because General Dynamics agreed not to appeal the Confirmation Order.[104] The Confirmation Order states "[t]he Court shall retain jurisdiction of the Reorganization Case after the confirmation of the <u>First Amended Plan, as modified</u> until consummation of the <u>First Amended Plan, as modified</u>, with respect to the following matters: . . . (b) to hear and determine any and all applications, adversary proceedings and other matters arising out of or related to the

---

[103]<u>See</u> Emergency Motion to Consider and Resolve Motion to Lift Abatement, Withdraw the Reference, and Consolidate Cases, Docket Entry No. 17, p. 2.

[104]<u>See</u> Plaintiff's Supplementary Response, Docket Entry No. 22, p. 7 ¶ 20.  <u>See</u> <u>also</u> Stipulation and Agreed Order Regarding the GDLS Proof of Claim, Bankr. Docket Entry No. 154, p. 2 ¶ 7.

First Amended Plan, as modified."[105]   Elite argues that "Elite's creditors, for whom the Bankruptcy claim is brought, agreed to the Confirmation Plan based on what was written, which was specifically that Elite's claim against [General Dynamics] would be decided by the federal courts.  General Dynamics should have objected to this provision at that time if it wished to send this case to arbitration, but it did not, and therefore waived its arbitration right.[106]

General Dynamics challenges Elite's statement that it agreed to "Debtor's First Amended Plan of Reorganization" and that such supposed agreement was also an agreement to proceed in court rather than in arbitration.[107]  General Dynamics objected to Elite's Plan and later stipulated that it would not appeal the entry of the order confirming the plan, but argues that it is inaccurate to say that it agreed to the Plan.[108]  "Further and most importantly, the

---

[105]Order Confirming Debtor's First Amended Plan of Reorganization, as Modified by Debtor's First Modification Filed on May 19th, 2015, Bankr. Docket Entry No. 152, p. 5 ¶ 3.

[106]Plaintiff's Supplementary Response, Docket Entry No. 22, p. 7 ¶ 20.

[107]See Defendant's Response to Plaintiff's Supplementary Response, Docket Entry No. 23, p. 3 ¶ 4.

[108]See id.  See also Objection of General Dynamics Land Systems to the Debtor's First Amended Chapter 11 Plan of Reorganization, Bankr. Docket Entry No. 119; Stipulation and Agreed Order Regarding the GDLS Proof of Claim, Bankr. Docket Entry No. 154, p. 2 ¶ 7.

Plan states nothing about [General Dynamics] relinquishing its contractual rights to proceed via arbitration."[109]

The parties agreed to abate both actions when the bankruptcy court ordered mediation.[110]   When the mediation failed, General Dynamics was the party to move to lift the abatement.[111]   Shortly after filing the motion to lift the abatement and consolidate, General Dynamics filed the Motions to Compel and the Motions to Dismiss.[112] Having carefully considered the parties' arguments, the court concludes that General Dynamics has not engaged in behavior in either action, before or after consolidation, that constitutes substantial participation in the litigation.   General Dynamics participated to the extent necessary to protect its rights, and has not waived its rights under the arbitration agreement.

### III.   Conclusion and Order

For the reasons explained above, Defendant's Motion to Compel Arbitration (Docket Entry No. 9) and Defendant's Motion to Compel

---

[109]See Defendant's Response to Plaintiff's Supplementary Response, Docket Entry No. 23, p. 3 ¶ 4.

[110]Defendant's Reply in Support, Docket Entry No. 16, p. 2 ¶ 3.

[111]See Motion to Consolidate, Docket Entry No. 8.

[112]The Motion to Consolidate (Docket Entry No. 8) was filed on July 24, 2015.  The Motions to Compel Arbitration (Docket Entry No. 9 and Adv. Docket Entry No. 12) and Motions to Dismiss (Docket Entry No. 10 and Adv. Docket Entry No. 13) were filed on August 12, 2015.

Arbitration (Adv. Docket Entry No. 12) are **GRANTED**.[113]  The parties are ordered to promptly commence arbitration.  The parties are ordered to submit a joint status report on February 26, 2016, and every sixty days thereafter.

      **SIGNED** at Houston, Texas, on this 18th day of DECEMBER, 2015.

 

 

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[113]Because the court has granted the Motions to Compel Arbitration, Defendant's Motion to Dismiss (Docket Entry No. 10) and Defendant's Motion to Dismiss (Adv. Docket Entry No. 13) are denied as moot.